UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

In re:
    STANLEY L. DISTEFANO, JR.,               Case No. 16-10694
                                                 Chapter 7
              Debtor.
-----------------------------------------------------------

    MARC S. EHRLICH,
    AS CHAPTER 7 TRUSTEE,
              Plaintiff(s),

      -v-                                               Adv. Pro. No. 20-90016

    STANLEY L. DISTEFANO, JR. &
    CHRISTI L. DISTEFANO,
              Defendant(s).
-----------------------------------------------------------

APPEARANCES:

Marc S. Ehrlich, Esq.
*Chapter 7 Trustee*
64 Second Street
Troy, New York 12180

Alexandra Edelman, Esq.
Primmer, Piper, Eggleston & Cramer PC
*Attorneys for Chapter 7 Trustee*
30 Main Street, P.O. Box 1489
Burlington, Vermont 05402

Paul A. Levine, Esq.
Meghan M. Breen, Esq.
Lemery Greisler LLC
*Attorneys for the Debtor*
677 Broadway, 8th Fl.
Albany, New York 12866

Nicole Leonard, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
*Attorneys for Endurance American Insurance Company*
225 Liberty Street, 36th Fl.
New York, New York 10281

1

Michael L. Boyle, Esq.
Boyle Legal, LLC
*Attorney for Christi L. DiStefano*
64 Second Street
Troy, New York 12180

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the Court is a renewed settlement request ("Renewed Settlement Motion") brought by Marc S. Ehrlich, Esq., Chapter 7 Trustee ("Trustee Ehrlich"), pursuant to the Federal Rules of Bankruptcy Procedure ("Rule") 9019 and 11 U.S.C. § 105,[1] to approve the settlement of adversary proceeding No. 20-90016 ("AP"). (ECF No. 542). The AP was commenced on July 10, 2020, by Chapter 7 Trustee Douglas Wolinsky, Esq. ("Trustee Wolinsky").[2] Endurance American Insurance Company ("Endurance" or "Creditor") opposes the Renewed Settlement Motion. (ECF No. 544). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b). For the reasons that follow, the Renewed Settlement Motion is approved.

## BACKGROUND

This is the second decision to flow from the AP. Familiarity with the Court's prior Memorandum-Decision analyzing the original settlement motion ("Original Settlement Motion") is presumed. (ECF No. 521). However, a brief recital of the pertinent facts to this determination follows. The AP has two causes of action: (1) permission to sell certain real property, pursuant to § 363(h), located in the State of Hawaii ("Hawaii Property") owned by Stanley L. DiStefano ("Debtor" or "DiStefano") and his non-debtor spouse, Christi L. DiStefano ("Christi") and (2) an

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2023).

[2] Trustee Wolinsky was initially appointed pursuant to § 1104. (ECF Nos. 249 & 250). When the case was converted, Trustee Wolinsky continued as the Chapter 7 Trustee. Tragically, he passed away and Trustee Ehrlich was appointed his successor on January 27, 2021. (ECF No. 450).

2

accounting of rents originating from the Hawaii Property since the petition date. The AP seeks an accounting of the rents as Trustee Wolinsky stated, "As the estate holds an undivided 50% interest in the Hawaii Property, it was entitled to 50% of any rental income received after [April 20, 2016]." (Adv. Pro. No. 1-2 at ¶ 43). He continues, "As the Trustee, the Plaintiff is entitled to an accounting of the rental income the Defendants have received from the Hawaii Property since the Debtor's [p]etition [d]ate." *Id.* at ¶ 44.

On September 6, 2022, the Court denied Trustee Ehrlich's Original Settlement Motion. (ECF No. 521). The Court found if Trustee Ehrlich succeeded in the AP's first cause of action and sold the Hawaii Property for a sale price of $2,000,000.00,[3] the most the estate could expect to receive is $232,411.15.[4] *Id.* at 10. The originally proposed settlement amount of $132,500.00 is 57% of the potential amount that could have been obtained through successful litigation. *Id.* The Court concluded the Original Settlement Motion was above the lowest range of reasonableness as to the first cause of action. *Id.* at 12.[5]

However, Trustee Ehrlich did not adequately address the AP's second cause of action regarding the rents generated from the Hawaii Property. *Id.* at 14. Since piecemeal rulings of Rule 9019 motions effectively modify the agreements, the Court could not separate the two causes of action. *See In re Breland*, No. 16-2270, 2018 Bankr. LEXIS 402, at *19 (Bankr. S.D. Ala. Feb. 14, 2018). Thus, the Original Settlement Motion was denied, without prejudice, in its entirety. (ECF No. 521 at 14).

---

[3] As Trustee Ehrlich utilizes a two-million-dollar figure, the Court will continue to conduct its analysis using that amount.

[4] It must be noted, the net amount of the sale will be reduced as taxes and other carrying costs continue to accrue.

[5] Rather than repeating its initial Rule 9019 decision, the Court reaffirms the findings contained therein as to the AP's first cause of action. (ECF No. 521).

The Renewed Settlement Motion increases the amount to $142,500.00. (ECF No. 542 at 1). Trustee Ehrlich indicates, "[T]his Renewed Motion is limited to providing additional information so that the Court can analyze the reasonableness of settling the Second Claim." *Id.* at ¶ 5. Therefore, the Court presumes the additional $10,000.00 is to be allocated to the rents cause of action.

## ARGUMENTS

Trustee Ehrlich urges the Court to approve the Renewed Settlement Motion. He stresses that the bankruptcy estate is insolvent and there will be significant litigation if this settlement is denied. (ECF No. 542 at ¶ 37). According to Trustee Ehrlich's analysis, assuming he is successful, the most he could recover from the rents is $18,000.00.[6] *Id.* at ¶ 30. Trustee Ehrlich states:

> Trustee Wolinsky served as Trustee of this case from April 20, 2016,[7] the commencement date of this case, through January 27, 2021. During that time period, Trustee Wolinsky was aware of the receipt of rental payments on the Hawaii Property and made the affirmative decision not to collect and administer the rent received during that time period based upon the Trustee's reasonable business judgment.[8]

*Id.* at ¶ 19.

Based upon his analysis and utilizing his business judgment, Trustee Ehrlich avers the renewed settlement amount of $142,500.00 is above the lowest range of reasonableness.

Not surprisingly, Endurance disagrees. First, the Creditor takes exception to Trustee Ehrlich's conclusion that he would be limited to collecting only $18,000.00 if he prevailed on count two of the AP. (ECF No. 544 at ¶¶ 31-37). Endurance argues Trustee Wolinsky was ready

---

[6] The $18,000.00 represents gross rental income of $48,000.00 minus estimated expenses of $12,000.00 less Christi's 50% share. (ECF No. 542 at ¶ 16).

[7] Trustee Wolinsky was appointed on May 31, 2018. *See* n.2.

[8] Trustee Ehrlich does not indicate how he obtained the information regarding Trustee Wolinsky's decision pertaining to the rental income.

4

and willing to collect the rental income and if successful, there would be a much greater recovery for the bankruptcy estate. *Id*. The Creditor also takes issue with Trustee Ehrlich accepting the Debtor's testimony regarding the rents and utilizing that amount in his analysis. *Id*. Finally, Endurance indicates it has offered to partially fund litigating the AP and, if successful, provide a carve-out to the unsecured creditors. *Id*. at ¶¶ 55-60.

## DISCUSSION

### I. RULE 9019 STANDARD.

When analyzing settlement motions, the Court is guided by certain basic principles. First, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (S.D.N.Y. 2012) (citations omitted). Next, the Court does not conduct a "mini trial" but "only needs to 'be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment.'" *In re Residential Cap., LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013) (quoting *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)). "While the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling." *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). It is the Court's obligation to review the Renewed Settlement Motion to determine "whether it 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 613 (2d. Cir. 1983) (citation omitted).

However, "[i]t is not the court's task to determine whether the settlement proposed by the parties is the best possible, or fairest, or most appropriate resolution of the dispute." *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009). "In determining whether to approve the trustee's application to settle a controversy, the bankruptcy court does not substitute

its judgment for that of the trustee." *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y. 1987) (citation omitted). Rather, "[i]f the [t]rustee chooses one of two reasonable choices, [the bankruptcy judge] must approve that choice, even if, all things being equal, [the bankruptcy judge] would have selected the other." *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998).

## II.   THE *IRIDIUM* FACTORS.

To assist with this analysis, the Court reviews the factors ("*Iridium* Factors") set out in *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d. Cir. 2007). The *Iridium* Factors are:

(1) [T]he balance between the litigation's possibility of success and the settlement's future benefits;
(2) [T]he likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
(3) "[T]he paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
(4) [W]hether other parties in interest support the settlement;
(5) [T]he "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
(6) "[T]he nature and breadth of releases to be obtained by officers and directors"; and
(7) "[T]he extent to which the settlement is the product of arm's length bargaining."

*In re Allard*, No. 18-14092, 2021 Bankr. LEXIS 1634, at *18-19 (Bankr. S.D.N.Y. June 21, 2021) (quoting *Iridium Operating LLC*, 478 F.3d at 462).

### A. *Iridium* Factors 1 & 2 - The balance between the litigation's possibility of success and the settlement's future benefits & the likelihood of complex and protracted litigation and its expense, inconvenience and delay.

Courts have found "[t]he balance between the likelihood and benefits of a successful outcome in litigation and the benefit of the proposed settlement is 'perhaps the most important factor to be considered in assessing a proposed settlement.'" *In re LATAM Airlines Grp. S.A.*, No. 20-11254, 2022 Bankr. LEXIS 248, at *65 (Bankr. S.D.N.Y. Jan. 28, 2022) (quoting *In re*

6

*Hilsen*, 404 B.R. at 71). "When claims at issue in a settlement raise complex questions of fact and law[9] that are not easily decided, courts find that the first *Iridium* Factor weighs towards approving a settlement." *Id*. (citations omitted).

Trustee Ehrlich does not have the same confidence in his position as Endurance does. He states, "[F]rom July 6, 2017 until July 2, 2019, the Debtor's bankruptcy case was administered as a Chapter 11 proceeding." (ECF No. 542 at ¶ 21). Trustee Ehrlich continues, "The DiStefanos have made it clear that if the Adversary Proceeding is litigated through trial, they will argue that the Debtor was a debtor-in-possession with regard to the Hawaii Property and was entitled to use rental income to maintain the Hawaii Property." *Id.* at ¶ 22. Thus, there is no doubt, if the AP is not settled Trustee Ehrlich will be on an uncertain path and may recover nothing for the bankruptcy estate. All of this would be undertaken while the estate is insolvent.

Endurance's argument that Trustee Ehrlich would recover significantly more if the matter were litigated is flawed as it assumes that there are no risks associated with the litigation. *See In re LATAM Airlines Grp. S.A.*, 2022 Bankr. LEXIS 248, at *63-64, *77 (granting a Rule 9019 motion "in light of the litigation risks . . ." after observing argument that objectors to the settlement "conjure an alternate universe where . . . incredibly complex claims are subject to no litigation risk . . . .").

Moreover, settlement of the AP would not affect Endurance's lien(s) or rights and would allow Trustee Ehrlich to complete and ultimately close this case in due course, rather than have an insolvent estate engage in many years of litigation with an uncertain outcome.

---

[9] A potentially dispositive issue of law is what effect, if any, the Debtor receiving his discharge has on Endurance's claim. In addition, Trustee Ehrlich would have to overcome the Debtor's equitable defenses regarding the Hawaii Property rents.

For all these reasons, *Iridium* Factors 1 & 2 support approval of the Renewed Settlement Motion.

### B. *Iridium* Factors 3 & 4 – The paramount interests of the creditors and the degree to which creditors either do not object to or support the proposed settlement & whether other parties in interest support the settlement.

The Renewed Settlement Motion calls for prompt payment by the Debtor with Trustee Ehrlich receiving the funds within 90 days of court approval. (ECF No. 542 at ¶ 1). Prompt payment benefits all creditors, including Endurance. *See In re Hilsen*, 404 B.R. at 69 ("Viewed another way, the [s]ettlement [a]greement assures [the secured creditor] of a minimum recovery, without any litigation burden, risk, or expense . . . without otherwise affecting [the secured creditor's] rights."). Moreover, an expedited resolution is a valid benefit of the settlement. *See Doyaga v. Roth (In re Handler)*, 386 B.R. 411, 428 (Bankr. E.D.N.Y. 2007).

In this case, no other creditor has opposed either the Original Settlement Motion or the Renewed Settlement Motion. The only party that litigation benefits is Endurance. The longer it takes to resolve this matter interest accrues on Endurance's debt, thereby increasing their lien. If Trustee Ehrlich were to prevail, the Hawaii Property would be sold and a substantial portion of the Creditor's claim liquidated with minimal effort by Endurance.

Most importantly, even if Trustee Ehrlich prevails on every litigated issue, there is a distinct possibility any judgment rendered would be uncollectable. The Debtor is on social security and works part-time. (ECF No. 542 at ¶ 24). Christi also only works part-time. *Id.* The Debtor does not have any unencumbered real estate and therefore, Trustee Ehrlich may very well end up with nothing more than a paper judgment. *Id.* Endurance may have the wherewithal to roll the dice hoping Trustee Ehrlich will ultimately succeed in the AP, however, the result is not a certainty and other creditors may not be similarly situated.

For all these reasons, *Iridium* Factors 3 & 4 support approval of the Renewed Settlement Motion.

### C. *Iridium* Factors 5 & 7[10] – The competency and experience of counsel supporting the compromise and the reviewing bankruptcy judge's experience and knowledge & the extent the settlement is the product of arm's length bargaining.

There is no dispute the Court, Trustee Ehrlich and the Debtor's counsel have years of experience in bankruptcy. In addition, they have engaged in or presided over complex litigation and are more than able to spot potential legal issues or factual pitfalls in their positions. Moreover, the Renewed Settlement Motion is the product of arm's length negotiations.

Therefore, *Iridium* Factors 5 & 7 support approval of the Renewed Settlement Motion.

## III. THE PARTIES' CALCULATIONS.

As noted, Trustee Ehrlich indicates the most the estate could recover, based upon the rents, is $18,000.00. This is quantified by analyzing the rental income from the time he was appointed to the present. The Court previously found the most the estate could receive from the sale of the property is $232,411.15 and when combined with the potentially recoverable rental proceeds of $18,000.00 (as determined by Trustee Ehrlich)[11] the most the estate can recover is $250,411.15. Thus, the renewed settlement amount of $142,500.00 represents approximately 57% of the maximum potential recovery.

The Creditor argues the estate should receive the total collected in rent since the inception of this case which totals $263,000.00.[12] (ECF No. 544 at ¶¶ 31-37). However, this amount does

---

[10] *Iridium* Factor 6 is not applicable in this case.

[11] The Debtor and Christi have owned and controlled the Hawaii Property during the entire pendency of this bankruptcy proceeding. Trustee Ehrlich's accounting reflects rental income was generated periodically in 2016, 2017, 2018, 2019 and 2022. (ECF No. 542 at ¶ 9). Hence, the Court does not necessarily agree with Trustee Ehrlich's contention that all rents prior to his tenure have been waived or are subject to equitable defenses.

[12] *See Id.* for Trustee Ehrlich's accounting of the rents collected since the petition date.

not account for expenses and upkeep on the Hawaii Property, including homeowner's association dues, taxes and miscellaneous carrying.

According to the Court's calculations, the most the estate is entitled to from the rents is $89,420.00.[13] Combining this figure to the sale proceeds of the Hawaii Property ($232,411.15), the most the estate could recover under the best of circumstances litigating the AP is $321,831.15. The $142,500.00 proposed settlement amount equates to approximately 44% of the total best-case recovery. The Renewed Settlement Motion does not fall below the lowest range of reasonableness. "[T]he Second Circuit has held that 'the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Guevoura Fund Ltd. v. Sillerman*, No. 18-cv-09784, 2019 U.S. Dist. LEXIS 218116, at *29 (S.D.N.Y. Dec. 18, 2019) (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 445 (2d Cir. 1974) (approving a 57% recovery settlement); *see also In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557, 2014 U.S. Dist. LEXIS 177175, at *25 (S.D.N.Y. Dec. 19, 2014) (approving settlement with 36% recovery); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132, 2014 U.S. Dist. LEXIS 64517, at *26-28 (S.D.N.Y. May 9, 2014) (approving settlement in the recovery range of 9.2% to 21% of estimated damages); *In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629, at *35 (S.D.N.Y. Nov. 7, 2007) (approving settlement with 23.2% recovery); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. Jan. 29, 2002) (approving settlement with 41% recovery).

---

[13] This amount is determined as follows: $263,000.00 – $84,160.00 (25% of rent for expenses and upkeep) = $178,840.00. The estate is entitled to the Debtor's one-half share for a recovery of $89,420.00. (ECF No. 542 at ¶ 9).

## IV. THE AMENDED[14] ENDURANCE OFFER.

Endurance argues the Renewed Settlement Motion ignores its amended offer to assist in funding the § 363(h) litigation. (ECF No. 544 at ¶¶ 55-60). The Creditor amended its offer to add the following:

- Up to $50,000 of the $100,000 available to the trustee for legal fees and costs may be applied to the estate for the costs of administration to date.
- In the event of successful litigation and the availability of funds for unsecured creditors, Endurance's unsecured claim will not participate in the pro rata distribution of the first $25,000 available for creditors with allowed unsecured claims.

*Id.* at ¶ 29.

Endurance argues the estate is best served by Trustee Ehrlich accepting the Creditor's amended offer to partially fund the litigation which also provides a carve-out for the unsecured creditors. However, the Creditor has not amended or deleted certain problematic terms of its offer which are as follows:

- The above amounts are contingent on 1) the Trustee not entering into a settlement or sale agreement without the consent of Endurance and 2) on Endurance being consulted on the litigation and filings with a reasonable opportunity to provide input.

---

[14] Endurance's original offer made on March 2, 2022, follows, unaltered, in its entirety:
- Reasonable professional fees and costs going forward up to $100,000 upon proper application to the Court to fund litigation to prosecute Adversary Proceeding No. 20-90016-1-rel commenced against Mr. and Mrs. Distefano going forward even if the litigation is unsuccessful.
- If the Trustee through judgment entered in the Adversary Proceeding is granted authority to proceed to sale of the Hawaii property and does sell the property, the carve out from Endurance's secured claim (whereby the Trustee gets the first $75,000 of the estate's share of proceeds and 15% of the remainder) will still apply but the estate will receive a minimum of $300,000 from the Hawaii property sale proceeds and any collection of related rental income (which would supersede the $100,000 referenced above).
- The Trustee will acknowledge and recognize Endurance's allowed secured claim against Mr. DiStefano's interest in the Hawaii Property in the amount of $859,474.09 (the "Secured Claim") and agrees that the proceeds from sale of Mr. DiStefano's interest and collection of related rental income (other than the carve-out amount) will be paid to Endurance up to the amount of the Secured Claim.
- Nothing herein is a waiver of Endurance's unsecured claim in Mr. DiStefano's bankruptcy case.
- The above amounts are contingent on 1) the Trustee not entering into a settlement or sale agreement without the consent of Endurance and 2) on Endurance being consulted on the litigation and filings with a reasonable opportunity to provide input.
- Endurance would retain all rights to object to any proposed settlement or sale.
- This offer is subject to an agreement signed by both parties and approved by the Court.

(ECF Nos. 491-3, Ex. H & 544 at ¶ 28).

- Endurance would retain all rights to object to any proposed settlement or sale.

*Id*. at ¶ 28.

Under its amended offer, the Creditor obtains de facto veto authority over any proposed settlement. This unorthodox Punch and Judy show would lead to Trustee Ehrlich being nothing more than a puppet for Endurance. *See Geron v. Holding Cap. Grp. Inc. (In re PBS Foods LLC)*, No. 11-02717, 2015 Bankr. LEXIS 1794, at *38 (Bankr. S.D.N.Y. May 29, 2015) (citations omitted) ("The fact that the [l]andlord's claims represent a significant portion of the unsecured debt in this case did not give it veto power over the [s]ettlement.").

In any event, Trustee Ehrlich has not requested approval of Endurance's amended offer.

## CONCLUSION

After canvassing the issues and the promises and pitfalls of continued litigation, the Court finds the *Iridium* Factors support approving the Renewed Settlement Motion. Based upon the Court's calculations, $142,500.00 is above the lowest range of reasonableness to settle the AP and Trustee Ehrlich has not requested approval of Endurance's offer as it usurps his business judgment. Moreover, settlement in this instance provides funds within ninety days to an insolvent estate and avoids the possibility of Trustee Ehrlich obtaining a paper judgment after potentially years of litigation.

For all these reasons, the Court approves Trustee Ehrlich's request to settle the AP for $142,500.00.

**SO ORDERED.**

Dated: August 22, 2023　　　　　　　　　　　　/s/ Robert E. Littlefield, Jr.
Albany, New York　　　　　　　　　　　　　　Hon. Robert E. Littlefield, Jr.
　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge